BALISOK & KAUFMAN, PLLC
251 Troy Avenue
Brooklyn, New York 11213
Phone: (718) 928-9607
Fax: (718) 534-9747
*Proposed Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
In re:

       KRISHNA JAGROO                      Chapter 13

                                          Case No. 19-40123- nhl

                      Debtor
-----------------------------------------------------------X

**NOTICE OF OBJECTION TO PROOF OF CLAIM NO. 8 PURSUANT TO FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE RULES 3001, 3002 AND 3007**

      **PLEASE TAKE NOTICE** that, upon the annexed motion of Joseph Y. Balisok, Esq., attorney for Krishna Jagroo ("Debtor"), the annexed exhibit, and Debtor's affirmation in support, a motion will be made before the Honorable Nancy H. Lord, Courtroom 3577, at the United States Bankruptcy Court for the Eastern District of New York, at the Conrad B. Duberstein Courthouse, 271-C Cadman Plaza East, Brooklyn, NY 11201, on January 13, 2021, at 9:30 a.m., for the entry of an order granting Debtor's Objection to Proof of Claim; and for such other and further relief that this Court deems just and proper.

      **<u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to enter an Order granting any of the relief herein requested, or if you want the court to consider your views on the motion, then on or <u>before</u> January 11, 2021, you or your attorney must:

1. File with the court a written request for a hearing *or, if the court requires a written response*, an answer, explaining your position, at:

United States Bankruptcy Court
Eastern District of New York
271-C Cadman Plaza East, Ste 1595
Brooklyn, New York 11201

2. If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above; You must also send a copy to:

Balisok & Kaufman, PLLC
251 Troy Avenue
Brooklyn, NY 11213

3. Attend the hearing scheduled to be held on Jan uary 13, 2021, at 9:30 a.m.in the United States Bankruptcy Court, located at 271-C Cadman Plaza East, Courtroom 3577, Brooklyn, New York 11201; and

4. Take any and all other steps required to oppose a motion under local rule or court order.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.

Dated: Brooklyn, New York

March 5, 2020

/s/ *Joseph Y Balisok*

Joseph Y. Balisok
BALISOK & KAUFMAN, PLLC
251 Troy Avenue
Brooklyn, NY 11213
Telephone: (718) 928-9607
Facsimile: (718) 534-9747
joseph@lawbalisok.com

To:

Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

Chapter 13 Trustee
Marianne Derosa, Esq.
100 Jericho Quadrangle, Suite 127
Jericho, NY 11753

Chase Records Center
JPMorgan Chase Bank N.A.
Attn: Correspondence Mail
Mail Code LA4-5555
700 Kansas Lane
Monroe, LA 71203

**UNITED STATES BANKRUPTCY COURT**  **HEARING DATE:** January 13, 2021
**EASTERN DISTRICT OF NEW YORK**  **HEARING TIME:** 9:30 a.m. (EST)
-----------------------------------------------------------X
In re:               Chapter 13

    KRISHNA JAGROO      Case No. 19-40123-nhl

        Debtor.
-----------------------------------------------------------X

### OBJECTION TO PROOF OF CLAIM NO. 8 PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE RULES 3001, 3002 AND 3007

TO: THE HONORABLE NANCY H. LORD
  UNITED STATES BANKRUPTCY COURT

   Debtor, Krishna Jagroo, through his attorney Joseph Y. Balisok, Esq. of Balisok & Kaufman, PLLC, an attorney duly admitted to practice law before this Court, submits this Objection to Proof of Claim Number 8 filed by JPMorgan Chase Bank, National Association ("Creditor") and in support thereof states as follows:

   1.  On January 1, 2019, Debtor Krishna Jagroo filed a voluntary Chapter 7 Petition with the bankruptcy court. The debtor was discharged on July, 25, 2019.

   2.  On October 27, 2019, Debtor Krishna Jagroo converted its Chapter 7 case to a Petition for Reorganization under Chapter 13 of the Bankruptcy Code.

   3.  The deadline for filing claims was set for October 23, 2019.

   4.  Creditor filed a purported proof of a partially secured claim against Debtor with the court on December 17, 2019, docketed as Claim 8 in the claims register[1], stating that the creditor is owed $94,219.66. It states that the claim stems from money loaned.

---

[1]Annexed as Exhibit A is a copy of the Creditor's Proof of Claim.

5.      The time limit for filing claims in chapter 13 cases is seventy days from the order for relief, or if the case is converted to chapter 13, the date of conversion. Fed. R. Bankr. P. 3002(c).

6.      This rule was amended in 2017 to make clear it applies to secured claims. The failure to file a timely secured claim will normally preclude the creditor from receiving distributions in a case, but does not affect the creditor's lien. Fed. R. Bankr. P. 3002(a).

7.      Prior to the 1994 amendments to the Code, the rule's dictate that late-filed claims cannot be allowed had been found by some courts to be inconsistent with the Code. *See, e.g., In re* Hausladen, 146 B.R. 557 (bankr. D. Minn. 1992). Most courts rejected this approach, however, and had found the rule to be valid. *See, e.g., In re* Johnson, 156 B.R. 557 (Bankr. N.D. Ill. 1993); *In re* Zimmerman, 156 B.R. 192 (Bankr. W.D. Mich. 1993). *See also* Jones v. Arross, 9 F.3d 79 (10th Cir. 1993) (late filed claim in chapter 12 case disallowed, citing *Zimmerman*). And even the courts permitting late-filed claims had found that a chapter 13 plan may treat late-filed claims differently than those which were filed on time. *See In re* Hausladen, 146 B.R. 557 (Bankr. D. Minn. 1992). Thus plan provisions separately classifying late claims and providing for little or no dividends to be paid to them should be considered.

8.      This issue was largely mooted by the 1994 amendments to the Code, which added 11 U.S.C. S 502(b)(9), specifically providing that late filed claims are, upon objection, to be disallowed. This amendment does not create the necessity of objecting to such claims.

9.      A holder of a claim that is secured by a security interest in the debtor's principal residence is given additional time to file supplemental attachments to the proof of claim. Fed. R. Bankr. P. 3002(c)(7)(B).

10.    If a claim is not filed on time and an objection to the claim is filed, the claim may be disallowed. Fed. R. Bankr. P. 3002(c); Spokane Law Enforcement Fed. Credit Union v. Barker (*In re* Barker), 839 F.3d 1189 (9th Cir. 2016) (court has no discretion to extend deadline; listing of debt in chapter 13 schedules is not informal proof of claim); *In re* Greenig, 152 F.3d 631 (7th Cir. 1998) (court does not have equitable powers to allow late claim in chapter 12); *In re* Aboody, 223 B.R. 36 (B.A.P. 1st Cir. 1998) (late claim not permissible in chapter 13 even if there was "excusable neglect"); *In re* Dennis, 230 B.R. 244 (Bankr. Dn.N.J. 1999) (creditor whose late claim was disallowed had not standing to object to plan's treatment or part of claim which had been disallowed).

11.    Since this filing occurred almost two months past the deadline for filing claims, it should be disallowed.

12.    Additionally, Federal Rule of Bankruptcy Procedure 3001 requires that when a claim is based on a writing, an original or duplicate of the writing must be filed with the proof of claim. Fed. R. Bankr. P. 3001(c).

13.    Since the underlying debt for Claim 8 is based on a writing, Rule 3001 requires that an original or duplicate of the writing be filed with the proof of claim.

14.    Claim 8 fails to provide the documentation for the contractual basis for the debt required by Rule 3001.

15.    Rule 3001(b)(2)(D) states that upon objection to claims for insufficient documentation, courts can be asked to exclude from evidence documents not provided in accordance with the rule and award attorney fees and expenses to the debtor.

16.    Since Claim 8 neglects to provide the evidentiary documents required by Rule 3001(b)(2)(D), the claim should be disallowed.

17.    Moreover, Rule 3001(a) states that the proof of claim "shall conform substantially to the appropriate Official Form" and the instructions contained on the claim form (Official Form 410, Line 8) state that the claimant must attach supporting documents. *See* Official Form 410 (Line 8: "Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c)" and Line 9: "Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.")

18.    An unsubstantiated claim is facially defective and not entitled to the presumption of validity. *See In re* Consol. Pioneer Mortgage, 178 B.R. 222 (B.A.P. 9th Cir. 1995); *In re* Chain, 255 B. R. 278 (Bankr. D. Conn. 2000); *In re* Lindell Drop Forge Co., 111 B.R. 137 (Bankr. W.D. Mich. 1990). *See also In re* Nussman, 2013 WL 5799001 (Bankr. E.D. N.C. Oct. 28, 2013) (credit card claim filed in compliance with Rule 3001(c)(3) was entitled to presumption of validity and was not rendered unenforceable by creditor's failure to comply with state law pleading requirements for collection of such claims.

19.    Without this presumption, a facially defective claim provides evidence to "dispute its own validity" and shall be disallowed upon a general objection unless the creditor introduces evidence that proves the claim. *In re* Kirkland, 572 F.3d 838, 841 (10th Cir. 2009) (claim disallowed because creditor failed to provide any documentation in proof of claim or to meet burden of proof at trial; fact that debtor had scheduled claim was not evidence that could be used against trustee's objection); *In re* Tran, 369 B.R. 312 (S.D. Tex. 2007) (upon objection to an improperly documented proof of claim not entitled to prima facie validity, claimant has burden of production); *In re* Circle J Dairy, Inc., 112 B.R. 297, 300 (W.D. Ark 1989); *In re* Gilbreath, 395 B. R. 356 (Bankr. S.D. Tex. 2008) (claims disallowed when creditor provided documentation only

after objections filed, and in connection with "eleventh hour amendments" which court refused to approve); *In re* Porter, 374 B.R. 471 (Bankr. D. Conn. 2007) (claims disallowed when not documented because creditors did not respond to debtor's request for documentation); *In re* Taylor, 363 B.R. 303 (Bankr. M.D. Fla. 2007) (claim disallowed when creditor failed to offer documents to supplement undocumented claim). *See also In re* Wingerter, 376 B.R. 221 (Bankr. N.D. Ohio 2007) (Bankruptcy Rule 9011 requires a claim purchaser, before filing a proof of claim with a bankruptcy court, to obtain originating documents or, when such documents are not available, a clear understanding of the nature of the original dealings that support the assertion of a claim against the particular debtor), *appeal dismissed as moot*, 394 B.R. 859 (B.A.P. 6th Cir. 2008).

20.     Since claim 8 does not provide the necessary documentation to substantiate its claim required by Rule 3001(a), it should be disallowed.

21.     Additionally, if a creditor claims fees that are excessive and an objection is filed, the secured claim holder has the burden of producing evidence of the reasonableness of its fees and charges. *In re* Atwood, 293 B.R. 227 (B.A.P. 9th Cir. 2003) (unsworn memorandum of counsel that did not include fee agreement or disclose its terms, and did not state what tasks were performed in the case, deprived claim of Rule 3001(f) presumption of validity); *In re* England, 586 B.R. 795 (Bankr. M.D. Ala. 2018) (fees disallowed when creditor did not offer evidence showing fees were reasonable); *In re* Coates, 292 B.R. 894 (Bankr. C.D. Ill. 2003) (once objection to claim is filed, party asserting claim must place into evidence terms of the fee contract with the attorney, time records, a copy of any judgment including fees, and receipts or invoices for expenses). *See also In re* Taylor, 2013 WL 1276507 (Bankr. N.D. Miss. Mar. 27, 2013) (once

error had been shown in mortgage lender's records the lender had burden of showing its records were accurate).

22.    To the extent that the creditor claims a variety of other amounts, such as bankruptcy monitoring fees[2], duplicative escrow charges[3], and duplicative interest charges[4], it has the burden to produce evidence of the reasonableness of its fees and charges.

23.    The claim should be disallowed since the Creditor has not met its burden of producing evidence of the reasonableness of its fees and charges.

24.    Additionally, Claim 8 should be barred for failure to comply with the rules regarding filing secured claims. Fed. R. Bankr. P. 3001(c), (d).

25.    A creditor must file evidence of granting and perfection of a claimed security interest with the proof of claim. Fed. R. Bankr. P. 3001(c), (d). Furthermore, this evidence must comply with the Uniform Commercial Code requirements that the collateral be adequately described. *In re* Esteves Ortiz, 295 B.R. 158 (B.A.P. 1st Cir. 2003) (installment sales agreement did not create security interest); *In re* Renshaw, 68 U.C.C. rep. Serv. 2d 730 (Bankr. M.D.N.C. 2009) (creditor who had given debtor possession of property that was subject of layaway agreement did not have security interest under state law), *aff'd in part, rev'd in part sub nom.,* Hancock v. Renshaw, 421 B.R. 738 (M.D.N.C. 2009); *In re* Shirel, 251 B.R. 157 (Bankr. W.D. Okla. 2000) (phrase "all merchandise" in credit card application did not sufficiently describe collateral and therefore did not create security interest in refrigerator by debtor); U.C.C. § 9-

---

[2] *See, e.g. In re* Prevo, 394 Ba.R. 847 (Bankr. S.D. Tex. 2008) (broker price opinion fees, late charges, and foreclosure fees not allowed when they were not documented); *In re* Stewart, 391 B.R. 327 (bankr. E.D. La. 2008) (drive-by inspection fees and fees for broker price opinions were not reasonable); *In re* Stark, 242 B.R. 866 (Bankr. W.D.N.C. 1999) (mortgage company violated automatic stay by adding monitoring fees to debtors' monthly statements).

[3] Such escrow charges are included in arrears that a creditor claims are due and then added again to the claim as an "escrow deficit."

[4] *In re* Wines, 239 B.R. 703 (Bankr. D.N.J. 1999).

203(1)(a). *See* National Consumer Law Center Repossessions § 3.2 (9th ed. 2017), *updated at* www.nclc.org/library. The creditor failed to comply with the requirement of adequately describing the collateral.

26.     Additionally, the debtor's signature must be reasonably legible for a proof of claim to be valid. *In re* Nedequ, 24 B.R. 1 (Bankr. S.D. Fla. 1982). This agreement violates the requirement of the debtor's signature being reasonably legible.

27.     Furthermore, if the security interest language is in small print, or buried in a credit card agreement, or appears only on a sales slip, unnoticed by the consumer, courts may deem it to be an unenforceable adhesion clause not knowingly signed by the debtor. *In re* Cunningham, 489 B.R. 602 (Bankr. D. Kan. 2013) (security interest language in cardholder agreement not signed by debtors was not sufficient). *See in re* Jackson, 9 U.C.C. Rep. Serv. 1142 (W.D. Mo. 1971); *In re* Gibson, 234 B.R. 776 (Bankr. N.D. Cal. 1999) (cross-collateralization buried in small print was not enforceable); National Consumer Law Center, Unfair and Deceptive Acts and Practices §§ 4.4., 5.6.3 (9th ed. 2016), *updated at* www.nclc.org/library. This claim should be deemed unenforceable for the above reasons.

28.     Also, when mortgage has been assigned and securitized, the entity filing the claim must be the property party. *See, e.g., In re* Wells, 407 B.R. 873 (Bankr. N.D. Ohio 2009) (proof of claim filed did not show standing to file claim.)

29.     Claim 8 should be disallowed for failing to conform with the above rules regarding secured claims.

30.     Finally, since this claim has been assigned, the assignment is a writing upon which the claim is based, and therefore should be attached to the claimant's proof of claim. *In re* Richter, 478 B.R. 30 (Bankr. D. Colo. 2012) (assignee must attach to its proof of claim some

documentation showing assignment of debt to claimant; *In re* White, 2008 WL 269897 (Bankr. N.D. Tex. Jan. 29, 2008); *In re* Armstrong, 320 B.R. 97 (Bankr. N.D. Tex. 2005; *In re* Hughes, 313 B.R. 205 (Bankr. E.D. Mich. 2004).

31.     Claim 8 fails to indicate in its proof of claim that the claim has been assigned, and it fails to provide the assignment documentation to establish the claimant's legal entitlement to the claim and its right to payment from the debtor to the exclusion of the original creditor named in the card agreement and all prior transferees.

32.     Without the assignment, there is no written agreement obligating the debtor to pay the debt buyer.

33.     If a claim is listed on the debtor's schedules as owing to another creditor, some evidence establishing the claimant's ownership of the claim and right to payment on the debt should be provided before a claim is afforded prima facie validity. *In re* Gilbreath, 395 B.R. 356 (Bankr. S.D. Tex. 2008); *In re* Kincaid, 388 B.R. 610 (Bankr. E.D. Pa. 2008); *In re* Povey, 2008 WL 1376271 (Bankr. E.D. Okla. Apr. 9, 2008); *In re* Leverett, 378 B.R. 793 (Bankr. E.D. Tex. 2007). Information listed by the debtor on Schedule E/F that is consistent with the claim, such as an account number and balance, "merely support[s] the existence of the claim and the balance due," but does "not establish ownership." *See In re* Melillo, 392 B.R. 1, 6 (B.A.P. 1st Cir. 2008).

34.     Since Claim 8 fails to indicated in the proof of claim that the claim was assigned, and fails to provide the assignment documentation, the claim should be disallowed.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

35.    WHEREFORE, it is respectfully requested that objection to proof of claim number

8 be sustained and the claim be disallowed and that the debtor be granted such and further relief

as to the Court may seem just and proper.

Dated: Brooklyn, NY
March 5, 2020

By:    */s/ Joseph Y. Balisok*
        BALISOK & KAUFMAN, PLLC
        251 Troy Avenue
        Brooklyn, New York 11213
        Phone: (718) 928-9607
        Fax: (718) 534-9747
        *Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
In re:

      KRISHNA JAGROO                     Chapter 13

                                      Case No. 19-40123- nhl

                       Debtor.
----------------------------------------------------------X

## CERTIFICATE OF SERVICE

STATE OF NEW YORK    )
                            ) ss: Brooklyn
COUNTY OF KINGS      )

      I, Joseph Y. Balisok, hereby declare, under penalty of perjury under the laws of the United States of America, and pursuant to 28 U.S.C. § 1746, that on Thursday, March 05, 2020, I caused to be served a copy of 1. Notice Of Motion Objecting to Proof of Claim, 2. Motion Objecting to Proof of Claim, 3. Affirmation of Debtor, and 4. Related exhibits, by regular mail upon each of the parties listed on the "Service-List" below by depositing true copies of same in sealed envelopes, with postage pre-paid thereon, in an official depository of the United States Postal Service within the Borough of Brooklyn, in the City and State of New York.

Dated: Brooklyn, New York          Respectfully submitted,
       March 5, 2020

                                /s/ Joseph Y. Balisok
                                Joseph Y. Balisok
                                Balisok & Kaufman, PLLC
                                251 Troy Avenue
                                Brooklyn, NY 11213
                                Tel. No. (718) 928-9607
                                Fax No. (718) 534-9747
                                Email: joseph@lawbalisok.com

## **Service List**

Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

Chapter 13 Trustee
Marianne Derosa, Esq.
100 Jericho Quadrangle, Suite 127
Jericho, NY 11753

Chase Records Center
JPMorgan Chase Bank N.A.
Attn: Correspondence Mail
Mail Code LA4-5555
700 Kansas Lane
Monroe, LA 71203

# EXHIBIT A

**Fill in this information to identify the case**

| | |
|---|---|
| Debtor 1 : | Krishna Jagroo |
| Debtor 2 : (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Eastern    District of:    New York |
| Case number: | 1-19-40123-nhl |

Official Form 410

## Proof of Claim

4/19

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

**Part 1:     Identify the Claim**

1. Who is the current creditor?

   JPMorgan Chase Bank, National Association
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor _____

2. Has this claim been acquired from someone else?

   [ X ] No.

   [ ] Yes.     From Whom? _____

3. Where should notices and payments to the Creditor be sent?

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

   Where should notices to the creditor be sent?

   Chase Records Center
   Name

   Attn: Correspondence Mail
   Mail Code LA4-5555

   700  Kansas Lane
   Number        Street

   Monroe        LA        71203
   City        State        Zip Code

   Contact phone    1-866-243-5851
   Contact email _____

   Where should payments to the creditor be sent? (if different)

   JPMorgan Chase Bank, N.A.
   Name

   Mail Code: OH4-7142

   3415 Vision Drive
   Number        Street

   Columbus        OH        43219
   City        State        Zip Code

   Contact phone    1-866-243-5851
   Contact email _____

   Uniform claim identifier for electronic payments in chapter 13 (if you use one): _____

4. Does this claim amend one already filed?

   [ X ] No.

   [ ] Yes.     Claim number on court claims registry (if known) _____    Filed on _____
                                                                                              mm  / dd / yy

5. Do you know if anyone else has filed a proof of claim for this claim?

   [ X ] No.

   [ ] Yes.     Who made the earlier filing? _____

Reviewer ID: Misty_Rowe_2019-12-16_14:10:02

| Debtor Name | Krishna Jagroo | Case Number (if known) | 1-19-40123-nhl |
|---|---|---|---|

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

**6.** Do you have any number you use to identify the debtor?

   ☐ No.

   **X** Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:    8745

**7.** How much is the claim?   $   94,219.66

Does this amount include interest or other charges?

   ☐ No.

   **X** Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(C)(2)(A)

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as healthcare information.

   Money Loaned

**9.** Is all or part of the claim secured?

   ☐ No.

   **X** Yes. The claim is secured by a lien on property.
   Nature of property

     **X** Real estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.

     ☐ Motor vehicle

     ☐ Other. Describe: _____

Basis for perfection:    Recorded Security Instrument

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of Property:   $ _____

Amount of the claim that is secured:   $ 94,219.66

Amount of the claim that is unsecured:   $ _____ (The sum of secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $0.00

Amount Interest Rate (When case was filed):   3.3750%

   **X** Fixed

   ☐ Variable

**10.** Is this claim based on a lease?

   **X** No.

   ☐ Yes. Amount necessary to cure any default as of the date of the petition.   $   -

**11.** Is this claim subject to a right of setoff?

   **X** No.

   ☐ Yes. Identify the property: _____

Reviewer ID: Misty_Rowe_2019-12-16_14:10:02

| Debtor Name | Krishna Jagroo | Case Number (if known) | 1-19-40123-nhl |
|---|---|---|---|

**12.** Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a).

[X] No

[ ] Yes. Check that all apply.

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

| | Amount entitled to priority |
|---|---|
| [ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| [ ] Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| [ ] Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| [ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| [ ] Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| [ ] Other. Specify subsection of 11 U.S.C. § 507(a)(  ) that applies. | $ |

* Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate boxes:

[ ] I am the creditor.

[X] I am the creditor's attorney or authorized agent.

[ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

[ ] I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  12/17/2019
MM/DD/YYYY

/s/ Nicole DiStasio
Signature

Print the name of the person who is completing and signing this claim:

| Name | Nicole DiStasio | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Title | Attorney | | |
| Company | Shapiro, DiCaro, & Barak, LLC Attorneys for JPMorgan Chase Bank, National Association | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | Shapiro, DiCaro, & Barak, LLC | | |
| | 175 Mile Crossing Boulevard | | |
| | Number   Street | | |
| | Rochester, NY 14624 | | |
| | City   State   Zip Code | | |
| Contact Phone | (585) 247-9000 | Email | NYBKCourt@logs.com |

Reviewer ID: Misty_Rowe_2019-12-16_14:10:02

04/16

Mortgage Proof of Claim Attachment

Mortgage Proof of Claim Attachment

If you file a claim secured by a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case number: | 1-19-40123-mhl |
| Debtor 1: | Krishna Jagroo |
| Debtor 2: | |
| Last 4 digits to identify: | 8745 |
| Creditor: | JPMorgan Chase Bank, National Association |
| Servicer: | JPMorgan Chase Bank, N.A. |
| Fixed accrual/daily | |
| simple interest/other: | Fixed |

| | |
|---|---|
| Case Number: | 1-19-40123-mhl |
| Debtor 1 | Krishna Jagroo |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal Balance: | $95,391.15 |
| Deferred Balance: | $0.00 |
| Interest due: | $0.00 |
| | |
| Fees, costs due: | $0.00 |
| Escrow deficiency for funds | $0.00 |
| Less total funds on hand: | $171.49 |
| Total debt: | $94,219.66 * |

\*The debtor(s)' liability for repaying this indebtedness was discharged in a prior Chapter 7 case. This claim is being filed in rem, because the debtor(s) did not provide for arrears in the plan. Chase reserves the right to amend this claim to include the arrears in the event the debtor(s) files an amended or modified plan that provides for arrears.

**Part 3: Arrearage as of Date of the Petition**

| | |
|---|---|
| Principal & interest due: | |
| Prepetition fees due: | |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | |
| Less funds on hand: | |
| Amount waived post-petition | |
| Amount per Court Order | |
| Total prepetition arrearage: | |
| Prepetition payments included by | |
| debtor or court in Total Arrearage | |
| Total Arrearage | |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & interest: | $1,236.79 |
| Monthly escrow: | $379.19 |
| Private mortgage insurance: | $0.00 |
| | |
| Total monthly payment: | $1,615.98 |

**Part 5: Loan Payment History from First Date of Default**

| A. Date | B. Contractual Payment Amount | C. Funds Received | Account Activity | | | F. Contractual Due Date | G. Prin, Int & esc past due balance | How Funds Were Applied/Amount Incurred | | | J. Amount to escrow | K. Amount to fees or charges | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | D. Amount Incurred | E. Description | | | | H. Amount to principal | I. Amount to interest | | | | L. Unapplied funds | M. Principal balance | N. Accrued interest | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | |

Official Form 410A

Mortgage Proof of Claim Attachment

1 of 1

Reviewer ID: Misty_Rowe_2019-12-16_14:10:02

| Servicer Loan # | 8745 | Interest Rate | 3.3750% |
| Borrower Name | Krishna Jagroo | 1st Principal Balance | $ 95,391.15 |
| BK Case Number | 1-19-40123-nhl | Escrow Balance | $ 1,104.44 |
| | | Suspense Balance | $ 67.05 |

| Transaction Description | Transaction Code | Transaction Date | Ins Premium Disb Due Date | Escrow Amount | Escrow Disbursement | Escrow Balance |
|---|---|---|---|---|---|---|
| Payment Application | 160 | 10/01/2018 | 10/01/2018 | $6.09 | | $ 895.57 |
| Payment Application | 172 | 10/11/2018 | 10/11/2018 | $348.31 | | $ 1,243.88 |
| Payment Application | 173 | 11/13/2018 | 11/13/2018 | $348.31 | | $ 1,592.19 |
| Payment Application | 172 | 12/11/2018 | 12/11/2018 | $348.31 | | $ 1,940.50 |
| Disb. for HOMEOWNERS INSURANC | 351 | 12/11/2018 | 12/11/2018 | | $(562.00) | $ 1,378.50 |
| Disb. for COUNTY TAX | 312 | 12/15/2018 | 12/15/2018 | | $(980.60) | $ 397.90 |
| Payment Application | 160 | 12/31/2018 | 12/31/2018 | $5.83 | | $ 403.73 |
| Payment Application | 173 | 01/14/2019 | 01/10/2019 | $348.31 | | $ 752.04 |
| Payment Application | 173 | 02/12/2019 | 02/09/2019 | $348.31 | | $ 1,100.35 |
| Payment Application | 173 | 02/21/2019 | 02/21/2019 | $29.80 | | $ 1,130.15 |
| Payment Application | 173 | 03/13/2019 | 03/11/2019 | $340.86 | | $ 1,471.01 |
| Disb. for COUNTY TAX | 312 | 03/13/2019 | 03/13/2019 | | $(980.60) | $ 490.41 |
| Payment Application | 160 | 04/01/2019 | 04/01/2019 | $3.80 | | $ 494.21 |
| Payment Application | 173 | 04/15/2019 | 04/11/2019 | $340.86 | | $ 835.07 |
| Payment Application | 173 | 05/15/2019 | 05/13/2019 | $340.86 | | $ 1,175.93 |
| Payment Application | 173 | 06/13/2019 | 06/11/2019 | $340.86 | | $ 1,516.79 |
| Disb. for COUNTY TAX | 312 | 06/24/2019 | 06/24/2019 | | $(1,013.53) | $ 503.26 |
| Payment Application | 160 | 07/01/2019 | 07/01/2019 | $4.72 | | $ 507.98 |
| Payment Application | 173 | 07/10/2019 | 07/10/2019 | $401.16 | | $ 909.14 |
| Payment Application | 173 | 08/07/2019 | 08/07/2019 | $401.16 | | $ 1,310.30 |
| Payment Application | 173 | 09/12/2019 | 09/12/2019 | $401.16 | | $ 1,711.46 |
| Disb. for COUNTY TAX | 312 | 09/20/2019 | 09/20/2019 | | $(1,013.53) | $ 697.93 |
| Payment Application | 160 | 09/30/2019 | 09/30/2019 | $5.35 | | $ 703.28 |
| Payment Application | 173 | 10/11/2019 | 10/11/2019 | $401.16 | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |
| | | | | | | $ 1,104.44 |

LOAN #:

# NOTE

FHA Case No.

MIN:

Multistate

MAY 25, 2012       White Plains,       NEW YORK
[Date]       [City]       [State]

119-52 Inwood Street, Jamaica, NY 11436
[Property Address]

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means GUARANTEED HOME MORTGAGE COMPANY, INC., A NEW YORK CORPORATION.

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of \*\*\*\*\*\*ONE HUNDRED SEVENTY FOUR THOUSAND FIVE HUNDRED ONE AND NO/100\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* Dollars (U.S. $174,501.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of THREE AND THREE-EIGHTHS percent ( 3.375% ) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the 1ST day of each month beginning on JULY 1, 2012. Any principal and interest remaining on the 1ST day of JUNE, 2027 will be due on that date, which is called the "Maturity Date."
**(B) Place**
Payment shall be made at
108 CORPORATE PARK DRIVE, SUITE 301
WHITE PLAINS, NY 10604

or at such place as Lender may designate in writing by notice to Borrower.
**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $1,236.79. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
**(D) Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.
[Check applicable box] ☐ Graduated Payment Allonge    ☐ Growing Equity Allonge
           ☐ Other (specify)

### 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6. BORROWER'S FAILURE TO PAY
**(A) Late Charge for Overdue Payments**
If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of 15 calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent ( 4.000% ) of the overdue amount of each payment.

**(B) Default**
If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

FHA Multistate Fixed Rate Note - 10/95
Online Documents, Inc.       Page 1 of 2



**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Krishna Jagroo_ (Seal)
Krishna Jagroo

PAY TO THE ORDER OF  JP Morgan Chase Bank, N.A.
WITHOUT RECOURSE
GUARANTEED HOME MORTGAGE COMPANY, INC.,
A NEW YORK CORPORATION
SOVEREIGN BANK, N.A., ATTORNEY IN FACT

BY: _____

BARBARA L. BALLINGER
ASSISTANT VICE PRESIDENT

Pay to the Order of:
Without Recourse
JP Morgan Chase Bank, N.A.
By: _____
Brenda Gyssom / Asst Secretary

FHA Multistate Fixed Rate Note - 10/95
Online Documents, Inc.

Page  2  of 2



Reviewer ID: Misty_Rowe_2019-12-16_14:10:02

Chase                Jagroo

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 8 |
|---|---|

**Document ID:** 2012062001090001    Document Date: 05-25-2012    Preparation Date: 06-20-2012
**Document Type:** MORTGAGE
**Document Page Count:** 6

| PRESENTER: | RETURN TO: |
|---|---|
| EQUITY SETTLEMENT SERVICES, INC 741125 AG | EQUITY SETTLEMENT SERVICES, INC 741125 AG |
| 444 ROUTE 111 | 444 ROUTE 111 |
| HOLD FOR PICK UP USTA | HOLD FOR PICK UP USTA |
| SMITHTOWN, NY 11787 | SMITHTOWN, NY 11787 |
| 631-715-3428 | 631-715-3428 |
| catherine.nevor@equitysettlement.com | catherine.nevor@equitysettlement.com |

### PROPERTY DATA

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| QUEENS | 12025 81 | Entire Lot | 119-52 INWOOD STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year_____ Reel ___ Page _____ or File Number_____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| KRISHNA JAGROO | MERS |
| 119-52 INWOOD ST | 1901 E. VOORHEES STREET, SUITE C |
| JAMAICA, NY 11436 | DANVILLE, IL 61834 |

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 174,501.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 174,501.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 872.50 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,745.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 436.25 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 493.50 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 06-28-2012 12:26 | |
| TOTAL: | $ | 3,547.25 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 67.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

*Annette M Hill*

*City Register Official Signature*

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 8 |
|---|---|---|
| Document ID: 2012062001090001 | Document Date: 05-25-2012 | Preparation Date: 06-20-2012 |
| Document Type: MORTGAGE | | |

PARTIES
MORTGAGEE/LENDER:
GUARANTEED HOME MORTGAGE COMPANY, INC.
108 CORPORATE PARK DR #301
WHITE PLAINS, NY 10604

GUARANTEED HOME MORTGAGE COMPANY, INC.
ATTN: FINAL DOCUMENT DEPARTMENT
108 CORPORATE PARK DRIVE, SUITE 301
WHITE PLAINS, NY 10604

LOAN #: ▮

—————————————[Space Above This Line For Recording Data]—————————————

State of New York

# MORTGAGE

FHA Case No.

MIN: ▮

THIS MORTGAGE ("Security Instrument") is given on  **MAY 25, 2012.**     The Mortgagor is
KRISHNA JAGROO

whose address is 119-52 Inwood Street
         Jamaica, NY 11436
                                                                      ("Borrower").

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E. Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.** This Security Instrument is given to  GUARANTEED HOME MORTGAGE COMPANY, INC., A NEW YORK CORPORATION

                                                                      which is organized and
existing under the laws of  NEW YORK,
and whose address is  108 CORPORATE PARK DR#301, WHITE PLAINS, NY 10604
                                                                      ("Lender").
Borrower owes Lender the principal sum of ****ONE HUNDRED SEVENTY FOUR THOUSAND FIVE HUNDRED ONE AND NO/100****************************************** Dollars (U.S.    $174,501.00   ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  JUNE 1, 2027.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. Borrower does hereby mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument.
    Borrower understands and agrees that MERS holds only legal title to the rights granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:
(A)  to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
(B)  to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    Borrower gives MERS (solely as nominee for Lender and Lender's successors in interest) rights in the following described property located in  Queens                           County, New York:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT
"A".

FHA New York Mortgage - 4/96
Online Documents, Inc.                      Page  1  of 5



which has the address of 119-52 Inwood Street, Jamaica,

LOAN #:

[Street, City]

New York   11436          ("Property Address");
          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
1.  **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.  **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq, and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear

Reviewer ID: Misty_Rowe_2019-12-16_14:10:02

LOAN #: ▓▓▓▓▓▓▓▓

excepted, Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341 (d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand

Reviewer ID: Misty_Rowe 2019-12-16 14:10:02

LOAN #:

made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may bring a lawsuit to take away all of the Borrower's remaining rights in the Property and have the Property sold. At this sale, Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount owed Lender, which fees shall become part of the Sums Secured.**

Lender may require immediate payment in full under paragraph 9.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. Borrower will not be required to pay Lender for the discharge, but Borrower will pay all costs of recording the discharge in the proper official records.

**20. Agreements about New York Lien Law.** Borrower will receive all amounts lent by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, Borrower will: (A) hold all amounts which Borrower received and which Borrower has a right to receive from Lender under the Note as a "trust fund;" and (B) use those amounts to pay for that construction or work before Borrower uses them for any other purpose. The fact that Borrower is holding those amounts as a "trust fund" means that for any building or other improvement located on the Property Borrower has a special responsibility under the law to use the amount in the manner described in this paragraph 20.

FHA New York Mortgage - 4/96
Online Documents, Inc.

Page 4 of 5

Reviewer ID: Misty_Rowe_2019-12-16_14:10:02

LOAN #:

**21. Borrower's Statement Regarding the Property [Check box as applicable].**

[x] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[ ] Condominium Rider     [ ] Growing Equity Rider     [ ] Planned Unit Development Rider

[ ] Graduated Payment Rider     [ ] Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Krishna Jagroo_        (Seal)
Krishna Jagroo

State of NEW YORK         )
                        ) SS:
County of QUEENS         )

On the 25 day of May in the year 2012, before me, the undersigned, a Notary Public in and for said State, personally appeared Krishna Jagroo, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

LORRAINE TOM
NOTARY PUBLIC-STATE OF NEW YORK
No. 01TO4914054
Qualified in Queens County
My Commission Expires December 07, 2013

My commission expires:_____

EXHIBIT "A"

LEGAL DESCRIPTION

ALL that certain plot piece or parcel of land, situate, lying and being in the Borough of Queens, County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Inwood Street, distant 59.10 feet northerly from the corner formed by the intersection of the northerly side of 120th Avenue and the westerly side of Inwood Street;

RUNNING THENCE westerly at right angles to Inwood Street and part of the distance through a party wall, 100 feet;

THENCE northerly parallel with Inwood Street, 20 feet;

THENCE easterly again at right angles to the westerly side of Inwood Street and part of the distance through a party wall, 100 feet;

THENCE southerly along the westerly side of Inwood Street, 20 feet to the point or place of BEGINNING.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises.

Block: 12025 Lot: 81

SAID PREMISES WILL BE IMPROVED BY
A ONE OR TWO FAMILY DWELLING ONLY



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

Document ID: 2019021200917001  Document Date: 02-04-2019  Preparation Date: 02-12-2019
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| NATIONWIDE TITLE CLEARING INC.<br>2100 ALT 19 NORTH<br>PALM HARBOR, FL 34683<br>SUPPORT@SIMPLIFILE.COM | JPMORGAN CHASE BANK, NA<br>C/O NATIONWIDE TITLE CLEARING, INC. 2100 ALT.<br>19 N<br>ORTH<br>PALM HARBOR, FL 34683<br>SUPPORT@SIMPLIFILE.COM |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 12025 | 81 | Entire Lot | 119-52 INWOOD STREET |

Property Type: DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN: ▓▓▓▓▓▓▓

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION<br>SYSTEMS, INC.<br>1901 E VOORHEES ST SUITE C<br>DANVILLE, IL 61834 | JPMORGAN CHASE BANK, NATIONAL ASSOCIATION<br>700 KANSAS LANE MC 8000<br>MONROE, LA 71203 |

☒ Additional Parties Listed on Continuation Page

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** |
| NYCTA: | $ | 0.00 | Recorded/Filed        02-12-2019 16:54 |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): ▓▓▓▓▓ |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 42.00 | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* |

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |
|---|---|

Document ID: 2019021200917001　　　Document Date: 02-04-2019　　　　Preparation Date: 02-12-2019
Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**

**ASSIGNOR/OLD LENDER:**
HOME MORTGAGE COMPANY, INC
1901 E VOORHEES ST SUITE C
DANVILLE, IL 61834

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: ▮▮▮▮▮▮▮

## ASSIGNMENT OF MORTGAGE

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME MORTGAGE COMPANY, INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834) by these presents does convey, grant, assign, transfer and set over the described Mortgage, as the same has not been consolidated, extended or modified, with all interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

MERS Address: Mortgage Electronic Registration Systems, Inc., 1901 E. Voorhees Street, Suite C, Danville, IL 61834

Said Mortgage is dated 05/25/2012, made by KRISHNA JAGROO to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME MORTGAGE COMPANY, INC., ITS SUCCESSORS AND ASSIGNS, in the principal sum of $174,501.00 and recorded on 06/28/2012, in Reel n/a, Page n/a and CRFN # 2012000256086 in the office of the Registry of QUEENS County, NY.

Property is commonly known as: 119-52 INWOOD STREET,
JAMAICA, NY 11436.

This mortgage(s) has not been assigned of record.

This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

Dated on 02 / 04 / 2019 (MM/DD/YYYY).

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME MORTGAGE COMPANY, INC., ITS SUCCESSORS AND ASSIGNS

By: _____
Omeka Newman                    VICE PRESIDENT

By: _____
                     Witness

STATE OF LOUISIANA   PARISH OF OUACHITA
Before me, on 02 / 04 / 2019 (MM/DD/YYYY), the undersigned, personally appeared Omeka Newman as VICE PRESIDENT for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOME MORTGAGE COMPANY, INC., ITS SUCCESSORS AND ASSIGNS, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that they executed the same in their capacity(ies), and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Katrina Marie Johnson 68375
Notary Public - State Of LOUISIANA
Commission expires: Upon My Death

KATRINA MARIE JOHNSON, NOTARY PUBLIC
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 68375

Document Prepared By: Omeka Newman , JPMorgan Chase Bank, N.A., 780 Kansas Lane, Suite A, Monroe, LA, 71203, 800-401-6587

Property ID/S/B/L) Block: 12025 Lot: 81





Customer Service Center  
Monday - Friday  8 a.m. - 12 a.m.(ET)  
Saturday  8 a.m. - 8 p.m. (ET)  
Hearing Impaired (TDD)  1-800-582-0542  
1-800-848-9136

KRISHNA JAGROO  
119 52 INWOOD ST  
JAMAICA, NY    11436

### Escrow: Taxes and Insurance Statement

| | |
|---|---|
| Loan Number | |
| Statement Date | 10/30/2019 |
| Review Period | 07/2019 to 10/2019 |
| **Escrow Shortage** | **$0.00** |

### Important Message

For more information about escrow, visit **chase.com/ManageMyMortgage.**

If you are in bankruptcy or have been given a discharge for your bankruptcy, this letter is for information only. This letter is not an attempt to collect a debt. It is not an attempt to collect, assess or recover all or part of the debt from you. If a bankruptcy trustee is making your payments for you, please give a copy of this statement to the trustee.

Your escrow shortage amount does not include any actual shortage that might have been included before you filed for bankruptcy.

### Monthly Home Loan Payment

| | Current Payment | New Payment Effective 11/01/2019 |
|---|---|---|
| Principal & Interest | $1,236.79 | $1,236.79 |
| Escrow Account Deposit | $401.16 | $379.19 |
| **Total Payment Amount** | **$1,637.95** | **$1,615.98** |

### Summary

**Your escrow account is balanced.**

You have exactly the amount of money in your escrow account needed to pay your estimated property taxes and/or insurance for next year. Keep this statement for your records. You do not need to do anything else.

Your monthly payment will be $1,615.98 starting 11/01/19.



Reviewer ID: Misty_Rowe_2019-12-16_14:10:02

## Balancing Your Escrow Account

There needs to be enough money in your escrow account to pay your property taxes and/or insurance. To do that, federal law allows us to require that you keep a minimum balance in your account. This cash reserve helps to cover any increase in taxes and/or insurance. Subject to state law limits, your minimum balance normally equals the amount of your escrow payments for about two months.

The payments made to and from your escrow account last year help predict your account activity for next year. This year's activity also helps predict what your lowest account balance is likely to be.[1]

To balance your escrow account, we compare what your lowest account balance will likely be next year with your minimum required balance. If there is no difference between the numbers, your escrow account is balanced.



| | |
|---|---|
| $758.38 | Your minimum required balance |
| $320.22 | Your estimated lowest account balance for 2019[1] |
| **$0.00** | **Your escrow account is balanced** |

[1]See the "Estimated Escrow Account Activity" chart in this statement.

## Accounts in the State of New York

New York State law required that the following information be furnished to you in conjunction with maintaining your real property tax escrow account. Chase is obligated to make all payments for taxes for which the real property tax escrow account is maintained and that if any such payments are not timely (paid by the penalty dates), then Chase is responsible for making such payments (out of your escrow account), including any interest and penalties to be paid by Chase. You are obligated to pay one-twelfth of the taxes each month to Chase, which is deposited into the real property tax escrow account, unless there is a deficiency in the account, in which case a greater amount may be required. Chase must deposit the escrow payments made by you in a banking institution or licensed branch of a foreign banking corporation whose deposits are insured by federal agency. Chase cannot impose any fees relating to the maintenance of the real property tax escrow account.

You may file complaints about your Servicer with the Department of Financial Services or obtain further information from the Department by calling the Department's Consumer Help Unit at 1-877-BANK-NYS or by visiting www.dfs.ny.gov.

## Escrow Account History

The chart below compares this year's activity on your escrow account with our estimates. The estimated amounts came from your last escrow account review.

- Your most recent mortgage payment due was $1,637.95. Your mortgage payment includes principal and interest $1,236.79 and escrow money $401.16.
- At the time of your last escrow account review, your expected lowest balance was $731.12. The chart below shows that your actual lowest escrow balance was $703.28. Over this period, an additional $10.07 was deposited into your escrow account for interest.

Note: changes in property taxes or insurance premiums create the difference between the estimated and actual amounts in the chart. An "E" in the chart below means expected activity that hasn't occurred yet.

*Indicates a difference between the estimated and actual amounts.

## This Year: July 2019 to October 2019

| Date | Activity | Estimated Amount | Actual Amount | Estimated Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|
| | Starting Balance | | | $1,012.15 | $503.26 |
| 07/2019 | Deposit | $365.56 | $405.88 * | $1,377.71 | $909.14 |
| 08/2019 | Deposit | $365.56 | $401.16 * | $1,743.27 | $1,310.30 |
| 09/2019 | Deposit | $365.56 | $406.51 * | | |
| | Withdrawal - COUNTY TAX | $931.79 | $1,013.53 * | $1,177.04 | $703.28 |
| 10/2019 | Deposit | $365.56 | $401.16 * | $1,542.60 | $1,104.44 |
| 11/2019 | Deposit | $365.56 | $0.00 * | $1,908.16 | $0.00 |
| 12/2019 | Deposit | $365.56 | $0.00 * | | |
| | Withdrawal - COUNTY TAX | $980.60 | $0.00 * | $1,293.12 | $0.00 |

**(Continued)**



Page 3 of 6



Escrow: Taxes and Insurance Statement

| | |
|---|---|
| Loan Number | |
| Statement Date | 10/30/2019 |
| Review Period | 07/2019 to 10/2019 |
| **Escrow Shortage** | **$0.00** |

KRISHNA JAGROO
119 52 INWOOD ST
JAMAICA, NY   11436

### This Year: July 2019 to October 2019 (continued)

| Date | Activity | Estimated Amount | Actual Amount | | Estimated Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|---|
| 12/2019 | Withdrawal - HOMEOWNER IN | $562.00 | $0.00 | * | $731.12 | $0.00 |
| 01/2020 | Deposit | $365.56 | $0.00 | * | $1,096.68 | $0.00 |
| 02/2020 | Deposit | $365.56 | $0.00 | * | $1,462.24 | $0.00 |
| 03/2020 | Deposit | $365.56 | $0.00 | * | | $0.00 |
| | Withdrawal - COUNTY TAX | $980.60 | $0.00 | * | $847.20 | |
| 04/2020 | Deposit | $365.56 | $0.00 | * | $1,212.76 | $0.00 |
| 05/2020 | Deposit | $365.56 | $0.00 | * | $1,578.32 | $0.00 |
| 06/2020 | Deposit | $365.56 | $0.00 | * | | $0.00 |
| | Withdrawal - COUNTY TAX | $931.79 | $0.00 | * | $1,012.09 | |
| | Total Deposits | $4,386.72 | $1,614.71 | | | |
| | Total Withdrawals | $4,386.78 | $1,013.53 | | | |
| | Account Balance as of 10/2019 | | | | | $1,104.44 |

### Expected Escrow Account Activity

The chart below estimates your escrow account balance for the next 12 months with your new monthly escrow account deposit of $379.19 and any anticipated withdrawals. The chart shows that you will reach your estimated lowest account balance of $320.22 in December 2019 (highlighted below). That is equal to your minimum required balance of $756.38.

### Next Year: November 2019 to October 2020

| Date | Activity | Estimated Amount | Actual Amount | Estimated Escrow Balance | Actual Escrow Balance |
|---|---|---|---|---|---|
| | Starting Balance | | | | $1,104.44 |
| 11/2019 | Deposit | $379.19 | | $1,483.63 | |
| 12/2019 | Deposit | $379.19 | | | |
| | Withdrawal - COUNTY TAX | $980.60 | | $882.22 | |
| 12/2019 | Withdrawal - HOMEOWNER IN | $562.00 | | $320.22 | |
| 01/2020 | Deposit | $379.19 | | $699.41 | |
| 02/2020 | Deposit | $379.19 | | $1,078.60 | |
| 03/2020 | Deposit | $379.19 | | | |
| | Withdrawal - COUNTY TAX | $980.60 | | $477.19 | |
| 04/2020 | Deposit | $379.19 | | $856.38 | |
| 05/2020 | Deposit | $379.19 | | $1,235.57 | |
| 06/2020 | Deposit | $379.19 | | | |
| | Withdrawal - COUNTY TAX | $1,013.53 | | $601.23 | |
| 07/2020 | Deposit | $379.19 | | $980.42 | |
| 08/2020 | Deposit | $379.19 | | $1,359.61 | |
| 09/2020 | Deposit | $379.19 | | | |
| | Withdrawal - COUNTY TAX | $1,013.53 | | $725.27 | |
| 10/2020 | Deposit | $379.19 | | $1,104.46 | |
| | Total Estimated Deposits | $4,550.28 | | | |
| | Total Estimated Withdrawals | $4,550.26 | | | |
| | Estimated Account Balance as of October 2020 | | | $1,104.46 | |

## Expected Escrow Account Payments

This section reflects the escrow activity that is expected to occur in the next 12 months. The "Total Tax and Insurance Monthly Payment Amount" at the bottom of this chart is your new monthly escrow deposit, as listed on page 1 of this statement.



| Tax | | | Insurance | | |
|---|---|---|---|---|---|
| Item | Annual Expense | Anticipated Date(s) of Payment | Item | Annual Expense | Anticipated Date(s) of Payment |
| COUNTY TAX | $980.60 | December 19 | HOMEOWNER IN | $562.00 | December 19 |
| COUNTY TAX | $980.60 | March 20 | | | |
| COUNTY TAX | $1,013.53 | June 20 | | | |
| COUNTY TAX | $1,013.53 | September 20 | | | |

**Total Tax and Insurance Monthly Payment Amount = $379.19**



Reviewer ID: Misty_Rowe_2019-12-16_14:10:02





A QUICK GUIDE TO UNDERSTANDING YOUR

# Annual Escrow Analysis



**Current Monthly Mortgage Payment**

**New Monthly Mortgage Payment**

**Escrow Account Summary**

This section shows if your escrow account is balanced, or if it has a surplus or a shortage. If you have a shortage, it explains your options to pay the difference. If you have a surplus of more than $50, your refund check is attached.

**Escrow Shortage Coupon or Surplus Check**

If you have a shortage, you can use this coupon to mail a full or partial payment of your escrow shortage. You can also pay all or part of your shortage at chase.com. If you have a surplus, your surplus check will be attached here. Please detach and cash it.

**Escrow Account History**

The activity for your escrow account from the past year is shown here, along with what we estimated your payments would be.

**Expected Escrow Activity for Next Year**

We've calculated what we expect your escrow account balance will be for the upcoming year, based on your current tax and insurance expenses. However, your account could have a shortage or a surplus at the end of the upcoming year, if your tax and/or insurance costs change.

**Expected Escrow Payment for Next Year**

These are the tax and/or insurance amounts we expect to pay in the next 12 months, and when we expect to pay them. If you believe information is missing or incorrect, please call us at 1-800-848-9136.



### FREQUENTLY ASKED QUESTIONS

**Why am I getting an Escrow Analysis?**

We run your Escrow Analysis annually so you know the amount of taxes and/or insurance we paid for you this past year with funds from your escrow account. We also include what we expect to pay next year.

**How is my monthly escrow payment calculated?**

Each year, we project how much you'll need in your escrow account to pay your taxes and/or insurance for the upcoming year, based on your taxes and/or insurance at the time of your Escrow Analysis. You pay a portion of the total projected escrow amount each month with your mortgage payment. We then use those escrow funds to pay your taxes and/or insurance on your behalf.

If your taxes and/or insurance change during the next 12 months, you could have a shortage or surplus in your account when we run next year's analysis.

**What is an escrow minimum balance?**

For most accounts, the minimum required balance is equal to two months of escrow payments. This minimum balance helps cover any increases in your taxes and/or insurance over the next year.

### ESCROW RESOURCES

- View your annual Escrow Analysis online to see if your monthly mortgage payment is changing due to an increase or decrease in your property taxes and/or insurance at **chase.com/EscrowAnalysis.**

- For answers to more questions and to watch our informational video, visit **chase.com/Escrow.**

- To stay informed about activity from your escrow account throughout the year, sign up for free escrow alerts at **chase.com/Alerts.**

©2015 JPMorgan Chase & Co.



Reviewer ID: Misty_Rowe_2019-12-16_14:10:02

**SHAPIRO, DICARO & BARAK, LLC**
Attorneys for JPMorgan Chase Bank, National Association
175 Mile Crossing Boulevard
Rochester, NY 14624
Telephone: (585) 247-9000, Fax: (585) 247-7380
**Nicole DiStasio**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

| | |
|---|---|
| IN RE | CHAPTER 13 |
| KRISHNA JAGROO | CASE NO. 1-19-40123-nhl |
| DEBTOR | |

### <u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK )
)ss:
COUNTY OF SUFFOLK )

    I, Jordan Rebolini, being sworn, say, I am not a party to this action; I am over 18 years of age, I reside in Suffolk County, New York.

    On ___DEC 17___, 2019 I served the within Proof of Claim upon:

TO:                                                        Debtor

    Krishna Jagroo
    11952 Inwood Street
    Jamaica, NY 11436

at the addresses designated by the foregoing individuals for that purpose by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York. And upon the following individuals:

Attorney for Debtor
Joseph Y. Balisok
Balisok & Kaufman PLLC


Trustee
Marianne DeRosa
Office of the Chapter 13 Trustee


U.S. Trustee

electronically through CM/ECF.


Date 12/17/19

_Jordan Rebolini_
Legal Assistant
Shapiro, DiCaro & Barak, LLC
Attorneys for JPMorgan Chase Bank,
National Association
One Huntington Quadrangle, Suite 3N05
Melville, NY 11747
Telephone: (631) 844-9611
Fax: (631) 844-9525


Sworn to before me this
17th day of December, 2019

_Deborah Callahan_
Notary Public

DEBORAH CALLAHAN
Notary Public, State of New York
Registration No. 01-CA6279202
Qualified in Suffolk County
Commission Expires 3/18/20 21

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
In re:

      KRISHNA JAGROO                          Chapter 13

                                          Case No. 19-40123- nhl

                         Debtor
------------------------------------------------------------X

## AFFIRMATION OF KRISHNA JAGROO

STATE OF NEW YORK     )
                             ) ss: Brooklyn
COUNTY OF KINGS      )

      **Krishna Jagroo**, being of full age, on his affirmation, deposes and says:

      1.      I am the Debtor in the above-caption proceeding, and I am fully familiar with the facts and circumstances upon which this Affirmation is made.

      2.      On January 1, 2019, I filed a voluntary Chapter 7 Petition with the bankruptcy court. I was discharged on July, 25, 2019.

      3.      On October 27, 2019, I converted my Chapter 7 case to a Petition for Reorganization under Chapter 13 of the Bankruptcy Code.

      4.      I submit this affirmation in support of my motion objecting to Claim Number 8 pursuant to Federal Rule of Bankruptcy Procedure Rules 3001, 3002 and 3007.

      5.      No Prior application seeking the same or similar relief has been made.

      6.      JPMorgan Chase Bank, National Association submitted a Proof of Claim in my bankruptcy case on December 17, 2019, based on an alleged money loaned debt.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

7.     This motion arises from Creditor JPMorgan Chase Bank, National Association's failure to comply with the Federal Rules of Bankruptcy Procedure Rule 3001, 3002 and 3007.

/s/   *Krishna Jagroo*_____
Krishna Jagroo

SUBSCRIBED and AFFIRMED to
before me this 5 March 2020

/s/ *Joseph Y. Balisok*
Joseph Y. Balisok
Notary Public – State of New York
No. 02BA6225166
Qualified in Kings County
My Commission Expires July 19, 2022